May it please the court, Deputy Attorney General Chung Mar for Respondent Appellant Larry Small, Warden. I'd like to reserve three minutes for rebuttal. This case presents two related issues. The first threshold issue is the question of whether the ADPA, Deferential Standard of Review, applies to the resolution of petitioner's federal constitutional claim. As the Supreme Court recently explained in Johnson v. Williams, a federal habeas court must presume that the state court adjudicated a federal claim on the merits if the state court rejected the claim without expressly addressing it. The presumption applies to this case and petitioner cannot rebut that presumption. Can I ask one question about the court offered three ways a petitioner could rebut the presumption? And so one of the ones I'm struggling with is if the state court goes through the 1089 analysis as to whether the juror was properly dismissed under 1089, does that basically take care of the Sixth Amendment analysis? In other words, are the two standards basically, let me put it in these terms, would 1089 allow dismissal of a juror under circumstances that the Sixth Amendment would prohibit? No, Your Honor. In answer to your question, it is our position that the state law standard under Penal Code Section 1089 is coextensive with the Sixth Amendment and incorporates the federal constitutional standard. And what's the best case you have? The best case I have for that, Your Honor, is the case of People v. Barnwell. It is a California Supreme Court case. But that case never mentions – that's my problem. That case never mentions 1089. Am I right about that? No, no. Barnwell involves both Section 1089 and the federal constitutional claim, in my recollection. Okay. Well, I have it right here. This is the case at 41 Cal 4, 1038, right? Sure. Okay. So that – and that's the case that I think helped you the most because it's cited by the state court of appeal here. Correct. Correct, Your Honor. And you're right. It does very much deal with the jury trial right under the Sixth Amendment and under the California Constitution. But I never remember seeing Section 1089 even cited in this entire opinion. And that's why I didn't – I couldn't tell. Are the two standards basically coextensive, as you said, or not? It is our position that they are coextensive even if there is not an expressed mention of 1089 in Barnwell. The California Supreme Court, subsequent to Barnwell, has certainly treated the state standard and the federal standard as coextensive. I believe Barnwell also discusses its earlier case of People v. Cleveland. And Cleveland itself involves a discussion of Section 1089. So, therefore, it would be our position that it does incorporate the state law standard. Barnwell says, when a court is informed of allegations which have proven true would constitute good cause for a juror's removal, a hearing is required, and it cites Cleveland in that context, and then cites a bunch of other cases for the proposition that an actually biased juror or one unable to perform their duties is to be discharged. Do you know if any of the other cases that are cited there refer to the statutory standard? There's Bergener, Cleveland, Ayala, Nessler, Fagin, and Thomas are all cited for that. It is my understanding that all of those cases involve an application of Section 1089. And I believe, I could be incorrect, that the language of the good cause language phraseology is contained within Section 1089, or it's either contained within the statutory text or it is contained in case law interpreting 1089 and applying 1089 to the factual situation at hand. Okay. So let's just go back to the State Court of Appeals decision here. Sure. Do you think the citation to Barnwell is enough to basically kind of incorporate in the Sixth Amendment analysis here? Yes, Your Honor. And I would point this case, point this court to the Supreme Court's resolution of a similar issue in Johnson v. Williams. In that case, the California Court of Appeal did not cite Barnwell because Barnwell was actually decided subsequent. Instead, it cited Cleveland. And Cleveland itself did not involve the direct resolution of a federal constitutional claim. It mostly involved state law. But in Cleveland, the California Supreme Court recognized that the resolution of the state law claim implicated federal constitutional concerns, specifically the defendant's Sixth Amendment right to a jury trial. In Johnson v. Williams, the United States Supreme Court found that the California Court of Appeal citation of Cleveland was sufficient and indicated that the California Court of Appeal, in that case, did address the federal constitutional claimant issue. Okay. And I've read that passage, but I'm not quite sure why the citation of the other case does the trick. Because this Court of Appeal, your Court of Appeal, cited Cleveland as well. Yes. So how come you don't rely on that and just say game over? I believe in my situation, in this situation, the citation to Barnwell is even stronger than the citation to Cleveland. Because Barnwell at least directly resolved a federal constitutional claim. In Cleveland, the California Supreme Court simply, again, mostly analyzed state law, while at the same time recognizing that the resolution of the state law question implicated the federal constitution. But it did not directly resolve a federal constitutional claim. By contrast, in Barnwell, the California Supreme Court did, in fact, resolve a federal constitutional claim on the merits. Therefore, by citing Barnwell in this case, the California Court of Appeal, it is presumed that the California Court of Appeal similarly resolved a federal constitutional claim here. You would say that this case presents an even stronger case for assuming that the state court addressed the federal constitutional claim than even Johnson v. Williams? Correct, Your Honor. That is exactly our position. Even aside from the citation of Barnwell, Petitioner's litigation strategy in the state courts similarly supports the conclusion that the presumption was not rebutted in this case. In the state appellate briefing, Petitioner treated his state and federal claims interchangeably. He did not separately designate what was state law and what was federal law. In essence, he basically intermingled the federal and state grounds. Given the nature of that litigation strategy, the California Court of Appeal could reasonably conclude that a resolution of the state law claims also encompassed the federal law claims. Notably, after the California Court of Appeal issued its opinion and Petitioner filed a petition for review in the California Supreme Court, Petitioner never suggested that the California Court of Appeal had somehow overlooked his federal claim. And again, in Johnson v. Williams, the United States Supreme Court found that Petitioner's litigation strategy in that case similarly supported the conclusion that the presumption was not rebutted. Are you going to turn to the merits? Absolutely. I was turning next to the merits, Your Honor. Let me just cut to the chase. Sure. I think it was you who provided us the, you know, the 28-J letter with our recent per curiam order and remand. Correct, Your Honor. I guess, I mean, does that basically end this? Because I have to say the circumstances of the dismissal of the juror in Johnson v. Williams seem way more compelling than the circumstances here. And I guess we've now held that the Supreme Court resolved on the merits, the claim against the defendant there? I think this court in its per curiam order basically indicated that the Supreme Court meant what it said when it indicated that the restrictive ADPA standard applied and that Petitioner was not entitled to relief under that standard. It is certainly true that there was no analysis under the ADPA in the Supreme Court's opinion in Johnson v. Williams. So I don't want to stretch it too far. And if I remember, when you guys filed your supplemental briefs, both of you assumed that there was going to be an analysis in our court on remand of the merits, right? Yes, Your Honor. Yes, Your Honor. I guess I'm kind of confused as to what we're supposed to do with your case now that we have this per curiam order. It's a couple lines at most. But if we're supposed to read it as our court has now held that the Supreme Court has rejected on the merits under ADPA the factual claim in Johnson v. Williams, I don't know. I mean, I'd love to hear from the defendant, but I don't know how the defendant could win in this case if that's true. Well, certainly, Your Honor, it would be our position that it presents a very difficult hurdle for Petitioner to overcome and that the deferential standard review is a very dispositive issue and that applying that standard review in this case would indicate and demonstrate that Petitioner would not be entitled to relief. You made the alternative argument, as I recall in your brief, that even if for some reason we were to conclude that ADPA did not apply, that even under de novo review you would urge us to reach the same result. If we were to review de novo, are there any things that we would defer to the trial court on or would we just simply look at the record ourselves? How would that work if that were the case? If there was de novo review, which of course we would argue that does not apply, but if de novo review did apply, I think under de novo review, yes, you would have to look at the trial court's record and the reasons for the discharge of the juror. And it's your view that juror number nine was discharged entirely because of vocal bias unrelated to the case against police and prosecutors and a refusal to deliberate as reported by four of the other jurors. Correct, Your Honor. It is our position that even under de novo review, the state trial court properly discharged juror number one on the basis of an actual bias. I thought it was nine. I'm sorry, juror number nine. You are correct, Your Honor. You are correct. Properly discharged juror number nine on the basis of a general bias against the police and prosecutors. Four of the jurors who answered questions in this in-camera hearing regarding the possible misconduct of juror number nine indicated that juror number nine had made statements of actual generalized bias against the police and prosecutors. I believe juror number one, juror number two, juror number eight, and juror number five all indicated that all prosecutors and all police lie. Can I ask just why on the facts of this case that statement had any relevance to the deliberations? Was there some issue of officer credibility involved in the underlying case? It seemed like a pretty thin and straightforward case that didn't involve any police officers having to give critical testimony. To be perfectly honest with you, I did not necessarily understand the question of police officer credibility as it related to the facts of this case. This case basically involved a shooting in a supermarket in San Fernando Valley. The guy made a call to get the guys to come, and that was it. Exactly. And it centered on identification of the perpetrators, not necessarily Petitioner, because his guilt was based upon his contacting the actual killers. With respect to the actual killers, it was an eyewitness I.D. case. For that reason, though, it seemed important to me that the statements reported by the other jurors included statements that the prosecutors are slimy and that prosecutors lie all the time. Correct, Your Honor. That may have suggested a different form of bias. I think it was a related bias because three of the four jurors basically said that juror number nine had said that all prosecutors and all police lie. The fourth juror limited his comments to saying that juror number nine had indicated that all police lie and did not mention prosecutors. Can I just try to articulate what I think was going on with this juror and you tell me if? Sure. Because I could see how this could not fairly be characterized as bias, but just this particular juror is resistant to convicting on what was it, second-degree murder? He was charged with first-degree murder with special circumstances. This guy said, hey, I got overcharged, or I was the subject of sort of overzealous prosecutors in my own case. They were talking about charging me with, I don't know if it was murder or something, and it ended up getting pleaded down or something. But I could see how a juror presented with the facts of this case would have a very strong reaction that the prosecutors here, too, had overcharged. I mean, I don't know how this guy got convicted of first-degree murder, frankly, on the facts of this case. So is that bias? If based on your experience, your own personal experience, you are sensitive to prosecutors being overzealous in terms of their charging decisions, and you come in, you're presented with facts that, in your view, don't remotely support a first-degree murder charge, and you say, I'm not convicting the guy of first-degree murder. You guys can talk. We've been talking for three days. I'm telling you you're not going to get me. And then you get dismissed. I mean, I could see how that wouldn't be bias. That's just this guy had a very strong reaction against a very thin first-degree murder case that was being presented to him. Your Honor, jurors, of course, bring in their everyday life experiences into the deliberation room, and we expect them to. We expect them to exercise common sense. It crosses a line when you use your prior experience for or against one party in particular, and it becomes more than just your personal experience, and it overarches into general statements that all prosecutors and all police lie, not just in my prior case, but all police, all prosecutors lie. Such generalized and broad statements cross over into impermissible actual bias against the police and prosecutors and make that juror unable to fairly base his verdict on the evidence at trial. Instead, he is injecting his personal experiences to such an extent that make it impossible for him to fairly and impartially weigh the evidence that was actually presented at trial. Counsel, one more question. In this last colloquy, my memory may be wrong on this, but was he not convicted of second-degree murder rather than first? He was convicted of first-degree murder. During the state appellate proceedings, it was reduced in degree. So ultimately, he comes here with a conviction of second-degree murder as it faces us today. Correct, Your Honor. There was a state law error, and the California Court of Appeal corrected that and found error and therefore reduced the conviction to second-degree murder. And that's where we stand. Correct, Your Honor. If I have any time available remaining, I would like to. You have minus time, but we'll give you some anyway for rebuttal. Thank you, Your Honor. Mr. Kennedy? Good morning, Your Honors, and may it please the Court, Sean Kennedy on behalf of Mr. Heredia. I just want to clarify something that came up in the Attorney General's argument. Officer credibility was what this case was all about, Judge Watford. It was very slim evidence against Mr. Heredia and other defendants as well. And the reason the holdout juror is talking about police officer testimony is because he was standing for the proposition, which I hope everyone in this Court would, that jury deliberations are not a rubber stamp for police witness testimony. Heredia was convicted of making a call to Eric Lora, actually several calls to Eric Lora in the supermarket, and later on other people, not Eric Lora, his brother Richard Lora and Mr. Diaz showed up and there was a fight in the parking lot and there was a shooting. The government, I mean the prosecution, actually called LAPD detectives, I think Detective Subia is one, to testify that the grainy footage in the El Supermarket, the video, was the co-conspirators and that was linking, obviously, what happened in the parking lot to Mr. Heredia. And then later on they called an LAPD detective who was a gang expert, even though there wasn't any gang enhancement, to testify to his opinion, which actually the state court said was wrong as a matter of law, that taggers, tagging crews, have like a hyper reaction to any kind of disrespect and that was used as the motive for Mr. Heredia to make the call to Eric Lora. The jury itself, the jury that actually existed after the holdout was discharged, struggled with these issues too. Eric Lora, the person that Mr. Heredia called, it was a hung jury and the foreperson announced it was 7-5 for acquittal. Later on, Mr. Diaz was acquitted by the California Court of Appeal based on insufficient evidence as a matter of law. So I respectfully disagree with my friend from the Attorney General's office that this was a done deal. And that said, what I'd like to say is even if the AEDPA applies, Heredia should still win under 2254 D2. And Judge Watford, I hope I'll be able to convince you that what happened here was actually worse than what happened in Williams because truly it was. In Williams, we're told by Justice Alito that there were three hours of deliberation before the jury sends out a note saying there's someone here who won't deliberate, this person is biased and believes in jury nullification and there is a quick inquiry and the holdout juror initially denies it but eventually admits referring to nullification. This is so different in this trial. Day 1, October 24th, we have arguments and the jury deliberates the rest of the day. Day 2, October 25th, we have a full day of jury deliberations. Day 3, we have a third day of full jury deliberations. And then on Day 4, October 27th, a judge filling in for the trial judge goes on the record announcing that she has received a note suggesting some kind of juror misconduct but she's also received a second note suggesting that the jury continues to deliberate so she didn't address it and they went to the end of the day. Can I just jump in because let me just cut to the heart of why I think this is important. I'm sorry, of course you can cut in. I'd love to hear your response because what seems to me problematic for you in this case is that the judge actually had a hearing at which he examined individually the competing views of what was going on and made a credibility finding that this juror number 9 was not credible in terms of his denials of the statements he had made and did find credible the other jurors who said from Day 1 this guy walked in and said basically I'm never going to believe anything any prosecutor or police officer tells me contrary to what he had said during 4-D-er and there's a credibility finding on that and the judge says I find that this guy is biased and he's not able to serve as a juror. So that to me is what seemed more compelling for the state I guess in this case than what we had in Johnson but maybe you can address that. Well, I hope I can because I think that credibility determinations are tough to overcome under the AEDPA but they're certainly not impossible. The second Miller-El case involved a straight-on credibility determination. The prosecutors in Dallas County were not engaged in racial discrimination and the U.S. Supreme Court said the state court's conclusion, essentially adopting the judge's view there that the prosecutors were credible and there was no racial animus in exercising peremptory, is shown up as wrong to a clear and convincing degree. The state court's conclusion was unreasonable as well as erroneous and this court has But isn't there a little bit more subtlety to a finding about racial motivation than there is as to the question of whether specific statements were made. You know, you have one juror saying, boy, I wanted to deal with this on the first day because the bias was so extreme and here are the specific statements that were made and if someone believes that, it just seems a little bit less ambiguous than a question of someone's intent. I mean, intent can be inferred from these statements but it just seems more difficult to overcome. Yes, Judge Graber, you're right. There is a background here but the standard really is whether or not the credibility decisions by a neutral and detached magistrate in this context were reasonable and if there are reasons to question that, I think the court can and should find a D2 violation. What is the reason to question? You know, I think your position would be stronger if it was one juror against one juror. Maybe they took a dislike to one another but you have four jurors who there's no apparent reason they knew each other previously or had any particular connection. All reporting very similar statements being made and similar attitude being expressed by number nine. Well, we know, I mean, the position of juror number nine, which was corroborated by a second juror, was that there was a group bullying him and we have half the jurors we don't know what they thought necessarily at all because they weren't brought in. But, you know, the jury foreperson, Vanier, admitted that she was married to a career LAPD officer. I think he had well over 25 years experience with the LAPD and the idea that from the get-go this juror was not deliberating is demonstrably false from the record because we know that it's actually at RT 6024 through 6026 that there was a consensus on some counts at the time that this inquiry is made. So if this juror has a blatant across-the-board bias against police officers, why is he participating for at least four and maybe five days of jury deliberations? There are notes suggesting they want to see Officer Subia's testimony and there are notes suggesting deliberations are going on and the deliberations focus on police officer testimony and there's an admission by jurors who are against juror number nine that he has reached a consensus on some counts. That doesn't sound like a reasonable statement that he's biased from the get-go and won't accept police officer testimony. So may I ask you as a procedural matter, are you focusing your contention of error on D2 as opposed to D1? Well, as put forth in my brief, I think that Heredia can prevail under D2 or D1, but this D2 finding of a bias is so strong that I'm using my argument here because I think it's really important to see what's going on here. Well, could I just ask you about D1? Yes. What is the clearly established Supreme Court case that you are relying upon to support your D1 argument? Well, the Sixth Amendment right to fair and impartial jury. What case are you saying? Duncan v. Louisiana and Williams v. Florida, which goes on to explain about the essential function of that jury to which you have a right to being basically the buffer between the defendant and the police. Of course, those are very general propositions and the Supreme Court has admonished us that we generally should not give habeas relief on general propositions, that it has to be on a more specific plane. So is there a more specific Supreme Court decision that you rely upon to support your D1 argument? Those are my primary ones. Judge, although in Brasfield v. United States from the 20s, the court said that a trial judge ought not to be inquiring in the division of the jury. And here, the probing of the judge during the hearing was so substantial that it definitely revealed a holdout juror. And there were references during the hearing by the court and counsel to an 11-1 jury. I think I agree with you that this is really a D2 case, if it's anything, because the state's not going to dispute that state trial judges don't have the authority to dismiss holdout jurors because of the views the jurors are expressing in the jury deliberations, right? I mean, everybody agrees on that. That's clearly established. I don't think the state's going to dispute that. This juror got dismissed because the judge made a credibility finding that he was biased. And I don't think you're going to dispute that the state lacks the power to dismiss a juror who, post voir dire, ends up displaying the fact that he's biased and can't deliberate impartially, right? I'm not going that far because I don't need to. I think the credibility decision here is utterly unreasonable. That's what I mean. Your case comes down to we'd have to find under D2 that the state judge made an unreasonable finding of fact in determining that this guy was biased, right? Yes, and I hope this panel will because there is strong reason to see a bias here. The judge began the trial announcing that there was a judicial advisement of a judicial conflict, potential conflict of interest, because her husband was an LAPD officer, career officer who appeared in this courthouse on cases. Then we have a jury foreperson who is also married to a police officer, and there is this outrage that someone in a case that turns large, in a thin case, that turns on a police witness testimony starts to ask questions about the police. Hassell, didn't juror number nine also have a brother who was not a full-fledged LAPD officer but was a police officer at a school? He was a full-fledged LAUSD police officer, yes. So I'm not sure which way that cuts. Maybe his experiences in his family led him to believe that his brother and the others were all liars, but I'm not sure why a relationship by itself gets you where you need to go because people had very different views were related to police officers. I'm sorry, if I was implying the relationship alone does something, the judge is the one who made the decision to make an announcement to the parties about this potential conflict of interest because of her marriage to a longtime police officer in this area. And that's why I say it. And I also would note that regarding the holdout juror, it appears his relationship with his brother was close because even in Judge Speer's words, the state trial judge, it's at RT 6010, he appropriately answered at voir dire the questions about police testimony. And, Your Honors, I just, isolating like one or two statements, like is done in the California Court of Appeal decision is one thing. But Miller L2, as well as Sanders versus Lamarck, which is a D2 court from this circuit on this issue, makes it clear that it's the whole picture, the record as a whole. And when we look at the record as a whole, the statements made by the jury foreperson, who's very invested in people interpreting reasonable doubt the way she does in evaluating evidence the way she does, suggests that she is also a very strong juror. And for some reason, the entire focus of the hearing is on juror number nine. When we have allegations from juror number nine and juror number 11, that juror number five, the foreperson, is engaged in inappropriate conduct too, that she is bullying him, not allowing him to express his opinion, and that he's become frustrated because he's not listened to under her leadership on the jury. And there's no inquiry into that at all. And the most, perhaps just to add to it, is the fact that the court then refers to some kind of hearsay allegations from the bailiff received from juror number five, the forewoman again, that you shouldn't believe juror number 11, who is backing up juror number nine because she has a crush on him. And it's actually referred to by counsel in the court, and the court questions other jurors whether they have an alliance. That is totally outside of the instructions given at trial, that the jury foreperson is to communicate through writing to the court not to be having conversations with the bailiff. That's contrary to his oath. And so when you take the whole picture of what happened here, a close trial, questions about police credibility, a juror who was accepted by both parties and answered the questions appropriately at voir dire, and then on the mid-deliberation inquiry, denied the allegations that he was biased, gave explanations for what he said. Some of the explanations were backed up. For instance, juror number eight, who was very critical of the holdout, said at RT-60051, he hasn't made the statement directly about the cops being liars, but then she said he's really on the government's case, the state's case. So the jurors talked about the issue differently, but it's clear when read as a whole and fairly, without these connections to the LAPD that seem to inspire a hyper-response that anyone would suggest an LAPD officer may be shading or exaggerating, without all of that, it's clear that there's a robust debate in the jury room about reasonable doubt and police witness testimony. And it plays out all the way to the end because the jury actually did convict this client of second degree, and the judge sent the jury back and told them to re-deliberate because they also had made a finding on special circumstances. Then they came back with a first degree. It shows a very active and coercive scenario for the jury because what did juror number 11 think? After the juror that she supported was unceremoniously removed for expressing questions about reasonable doubt and police witness testimony. Thank you, counsel. Thank you. Mr. Marr, you may have some rebuttal time as well. Your Honor, I'll try to be brief. I believe this is a D2 case, and it's going to be based on the state court's credibility findings as to juror number 9. Juror bias is a credibility determination based largely on demeanor. The state trial court had the firsthand opportunity to observe juror number 9's demeanor, and the state trial court found juror number 9 not credible. The state trial court found that juror number 9 had either lied or substantially misrepresented his past experiences as well as his feelings about the police and prosecutors. The state trial court found that juror number 9 had a preconceived bias that rendered him unable to be a fair and impartial juror in this case. On the basis of this record, petitioner is not entitled to relief under 2254 D2. Thank you. Thank you, counsel. The case just argued is submitted, and once again, very helpful, excellent arguments by both counsel. We appreciate them. And we will be adjourned for this morning's session. All rise. This court for this session stands adjourned.
judges: Graber, Rawlinson, Watford